Jason M. Ingber Esq. (SBN 318323)
Serach B. Shafa Esq. (SBN 358332)
**INGBER LAW GROUP**
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
Telephone: (213) 805-8373
Email: ji@jasoningber.com

Attorney for Plaintiff
Estate of John Barkodar, M.D.,
Lior Barkodar,
Leon Barkodar,
Linda Barkodar,
And Maryam Barkodar

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ESTATE OF JOHN BARKODAR, M.D**., by and through its representatives **LIOR BARKODAR**, and **LEON BARKODAR**, **LINDA BARKODAR**, and **MARYAM BARKODAR**, individually,<br><br>*Plaintiffs*,<br><br>v.<br><br>**CITY OF SOUTH GATE,** a municipal corporation; **3M COMPANY,** a Delaware Corporation; and **DOES 1 through 50,** inclusive,<br><br>*Defendants*. | CASE NO:<br><br>**COMPLAINT FOR DAMAGES:**<br><br>(1) **WRONGFUL DEATH**<br>(2) **NEGLIGENCE**<br>(3) **PUBLIC NUISANCE**<br>(4) **PRIVATE NUISANCE**<br>(5) **FAILURE TO WARN**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This action arises from the death of Dr. John Barkodar from kidney cancer on May 8, 2022, caused by decades of exposure to toxic chemicals and contaminants in the drinking water in South Gate, California, where Dr. Barkodar worked continuously from approximately 1990 until shortly before his death.

**COMPLAINT FOR DAMAGES**

2. For decades, Defendants knew or should have known that the water supply in South Gate was contaminated with dangerous chemicals, including but not limited to tetrachloroethylene (PCE), dichloroethylene (DCE), trichloroethylene (TCE), per-polyfluoroalkyl substances (PFAS), and other industrial solvents and chemicals known to cause cancer and kidney damage in humans.

3. PFAS are a class of man-made chemicals that include perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

4. In this Complaint, references to PFOS and PFOA also include all of their salts and precursor chemicals.

5. Defendants designed, manufactured, marketed, sold and/or assumed or acquired liabilities for the manufacture and/or sale of PFOS, PFOA, and/or products containing PFOS or PFOA, including but not limited to aqueous film-forming foam ("AFFF") (collectively, "Fluorosurfactant Products").

6. Despite this knowledge, Defendants failed to adequately warn Dr. Barkodar and other residents and workers in South Gate about the contamination, failed to adequately treat the water to remove these dangerous chemicals, and/or failed to prevent the release of these chemicals into the environment and water supply.

7. As a direct and proximate result of Defendants' actions and omissions, Dr. Barkodar was exposed to these toxic chemicals for more than 30 years, leading to his development of kidney cancer, his suffering, and his untimely death.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship among the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal environmental laws, including but not limited to the Safe Drinking Water Act, 42 U.S.C. § 300f et seq., the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601 et seq., and other federal statutes and regulations protecting drinking water and public health.

**COMPLAINT FOR DAMAGES**

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the property that is the subject of the action is situated in this district.

**PARTIES**

8. Plaintiff Estate of John Barkodar, M.D. is the legal entity representing the interests of Dr. John Barkodar, deceased, who was a resident of Los Angeles County, California, and who operated his medical practice in the City of South Gate continuously from approximately 1990 until shortly before his death on May 8, 2022.

9. Plaintiff Lior Barkodar is an individual residing in Los Angeles County, California, and is the son of Dr. John Barkodar. He brings this action both as a representative of the Estate of John Barkodar and in his individual capacity as a survivor of Dr. Barkodar.

10. Plaintiffs Leon Barkodar and Linda Barkodar are individuals residing in Los Angeles County and are the son and daughter of Dr. John Barkodar. They bring this action both as representatives of the Estate of John Barkodar and in their individual capacities as survivors of Dr. Barkodar.

11. Plaintiff Maryam Barkodar is an individual residing in Los Angeles County and is the wife of Dr. John Barkodar. She brings this action both as a representative of the Estate of John Barkodar and in her individual capacity as a survivor of Dr. Barkodar.

12. Defendant City of South Gate ("City") is a municipal corporation organized and existing under the laws of the State of California. The City owns and operates the public water system serving the City of South Gate, including the facilities that supplied water to Dr. Barkodar's medical offices located at 3314 Firestone Boulevard and 2809 Tweedy Boulevard in South Gate, California.

13. Defendant 3M Company ("3M"), formerly known as Minnesota Mining and Manufacturing Company, is a Delaware corporation with its principal place of business at 3M Center, St. Paul, Minnesota. 3M is the only company that manufactured AFFF containing PFOS and/or its precursor chemicals. 3M is authorized to conduct business in California.

14. The true names and capacities of Defendants DOES 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs at this time.

**COMPLAINT FOR DAMAGES**

Plaintiffs are informed and believe, and thereon allege, that each of the DOE Defendants is in some manner legally responsible for the events and happenings referred to herein and for Plaintiffs' damages. Plaintiffs will amend this Complaint to show the true names and capacities of these Defendants when they have been ascertained.

## FACTUAL ALLEGATIONS

15. Dr. John Barkodar operated his medical practice in the City of South Gate continuously from approximately 1990 until shortly before his death in 2022.
16. From approximately 1990 to 2005, Dr. Barkodar's medical office was located at 3314 Firestone Boulevard, South Gate, California 90280.
17. From approximately 2006 to 2022, Dr. Barkodar's medical office was located at 2809 Tweedy Boulevard, South Gate, California 90280.
18. Throughout his time working in South Gate, Dr. Barkodar consumed water from the City's public water system on a daily basis.
19. Unbeknownst to Dr. Barkodar, the water he consumed was contaminated with dangerous chemicals, including but not limited to PCE, DCE, TCE, PFAS, PFOS, and other industrial solvents and chemicals known to cause cancer and kidney damage in humans.
20. 3M began producing PFAS chemicals in the 1950s, which were used in various household products including its blockbuster product Scotchgard.
21. 3M produced approximately 70% of PFOA and PFOS that was historically used in the United States before stopping production of these chemicals in the early 2000s.
22. Internal studies and other documents show that 3M knew by the 1970s that PFOA and PFOS were toxic and accumulating in people's blood.
23. In 1975, independent scientists first alerted 3M that they found PFAS chemicals in human blood in Texas and New York, identifying Scotchgard as a likely source of contamination.
24. In the 1990s, a 3M environmental scientist detected PFOS in the blood of eagles and found that rats had the chemical in their livers, likely from fish-containing food.
25. After confirming PFAS was in human blood, 3M attorneys urged the company "not to release the true identity of the source," according to company records.

- 4 -
**COMPLAINT FOR DAMAGES**

26. A top 3M researcher, Dr. Richard Purdy, testified during a deposition that he was concerned about how 3M had conducted research into PFAS chemicals, expressing "profound disappointment" in the company's handling of environmental risks in his 1999 resignation letter.
27. PFAS contamination occurred when firefighting foams containing these chemicals were sprayed in fields or airports and left to seep into groundwater and other waterways.
28. Contamination also came from chemical manufacturing plants themselves, which produced PFAS for thousands of products including clothing, non-stick cookware, food packaging, carpeting, and beauty products.
29. PFAS have been linked to a range of health issues including decreased fertility, high blood pressure in pregnant people, increased risk of certain cancers, developmental delays, hormonal disruption, and reduced effectiveness of the immune system.
30. As early as 1985, the City knew that its water supply was contaminated with dangerous chemicals, as testing of wells in the central water basin, including South Gate, showed that many wells had traces of tetrachloroethylene and dichloroethylene.
31. In November 1985, the City closed its first well off Garfield Avenue after tests revealed 8 parts per billion of tetrachloroethylene, which exceeded acceptable levels.
32. In January 1986, two more wells in South Gate Park were closed due to levels of tetrachloroethylene and dichloroethylene exceeding state standards.
33. By January 1987, chemical contamination had forced South Gate to close 5 of 11 wells that supplied half its water.
34. Around late 1986, tests on two wells showed levels of tetrachloroethylene exceeding the state Department of Health Services' recommended "action level" of four parts per billion, with South Gate wells exceeding it at 10 and 14 parts per billion.
35. The City was aware that these levels of contamination posed a cancer risk to those who consumed the water. According to public reports, "The four parts per billion means that you have a one-in-a-million risk in contracting cancer if you were to drink two liters of water containing the four parts for 70 years..."
36. In December 1988, a sixth well was closed due to contamination by an industrial solvent at a level higher than recommended by the state, a chemical suspected of causing cancer in humans.

**COMPLAINT FOR DAMAGES**

37. By January 1989, South Gate was planning a $5-million treatment plant for five polluted wells and had removed a sixth well from service due to chemical contamination.
38. Around January 1989, Cooper Drum Company was being investigated as a potential source of the PCE contamination that forced South Gate to close four wells in 1986.
39. In February 1992, the EPA proposed adding Cooper Drum Co. to the national Superfund List due to soil and groundwater contaminated with industrial solvents and other chemicals, including cancer-causing vinyl chloride and benzene.
40. In February 1993, South Gate was building a $4-million underground reservoir to store water from four wells closed in 1985 due to contamination by PCE. The water in these wells exceeded the federally accepted standard for PCE, and it was known that exposure to high levels of PCE could result in various health issues, including liver and kidney damage.
41. Despite this knowledge, the City failed to adequately warn Dr. Barkodar and other residents and workers in South Gate about the contamination, failed to adequately treat the water to remove these dangerous chemicals, and/or failed to prevent the release of these chemicals into the environment and water supply.
42. As a result of his daily exposure to these toxic chemicals for more than 30 years, Dr. Barkodar developed kidney cancer.
43. Dr. Barkodar was first diagnosed with kidney cancer in late 2016.
44. Dr. Barkodar was diagnosed with a recurrence of kidney cancer in March 2020.
45. Despite medical treatment, Dr. Barkodar's condition deteriorated, particularly in the six weeks before his passing.
46. Dr. Barkodar passed away on May 8, 2022, as a result of his battle with kidney cancer.
47. Dr. Barkodar is survived by his sons, Lior Barkodar and Leon Barkodar, his daughter Linda Barkodar, and his mother Maryam Barkodar.
48. Dr. Barkodar's death was a direct and proximate result of his exposure to the toxic chemicals in the water supply in South Gate, which was caused by the negligence, wrongful conduct, and failure to warn of the Defendants.

**COMPLAINT FOR DAMAGES**

**FIRST CAUSE OF ACTION**

**WRONGFUL DEATH**

**(Against All Defendants)**

49. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

50. Defendants owed Dr. Barkodar a duty to provide safe drinking water, to warn of known contamination, and to prevent foreseeable harm from exposure to toxic chemicals in the water supply.

51. 3M knew by the 1970s that PFAS chemicals were toxic and bioaccumulative but continued production for decades.

52. 3M failed to adequately warn about the known health risks of PFAS exposure, including risks to kidneys and cancer potential.

53. 3M failed to take timely action to prevent ongoing contamination after learning of widespread PFAS pollution.

54. Defendants breached this duty by, among other things:

    a. Failing to provide safe drinking water;
    b. Failing to adequately treat contaminated water;
    c. Failing to adequately warn Dr. Barkodar and others about the contamination;
    d. Failing to prevent the release of toxic chemicals into the environment and water supply;
    e. Failing to comply with federal and state regulations regarding safe drinking water; and
    f. Failing to take appropriate remedial actions when contamination was discovered.

55. As a direct and proximate result of Defendants' breaches of duty, Dr. Barkodar was exposed to toxic chemicals, developed kidney cancer, and died.

56. As a further direct and proximate result of Defendants' actions and omissions, Plaintiffs have suffered the loss of Dr. Barkodar's love, companionship, comfort, care, assistance, protection, affection, society, and moral support, as well as the loss of his financial support and contributions.

57. Defendants' conduct was willful, wanton, malicious, and in conscious disregard of the rights and safety of Dr. Barkodar and others, justifying an award of punitive damages against non-governmental Defendants.

## SECOND CAUSE OF ACTION
## NEGLIGENCE
### (Against All Defendants)

58. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
59. Defendants owed Dr. Barkodar a duty to exercise reasonable care in the operation, maintenance, and management of the water supply system, and to prevent foreseeable harm from exposure to toxic chemicals.
60. Defendants breached this duty by failing to exercise reasonable care in the operation, maintenance, and management of the water supply system, and by failing to prevent foreseeable harm from exposure to toxic chemicals.
61. 3M had a duty to properly test its PFAS products for safety before widespread distribution.
62. 3M breached its duty by continuing to manufacture and sell PFAS products despite internal research showing health and environmental concerns.
63. 3M negligently concealed information about PFAS dangers from the public and regulators.
64. As a direct and proximate result of Defendants' negligence, Dr. Barkodar was exposed to toxic chemicals, developed kidney cancer, suffered pain and disability, and died.
65. As a further direct and proximate result of Defendants' negligence, Plaintiffs have suffered damages, including but not limited to funeral and burial expenses, medical expenses, loss of financial support, and loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

### THIRD CAUSE OF ACTION
### PUBLIC NUISANCE
### (Against All Defendants)

66. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
67. Defendants created and/or assisted in the creation of a condition that was harmful to health, indecent and offensive to the senses, and an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life and property by a substantial number of persons, including Dr. Barkodar.
68. The contamination of the water supply in South Gate constituted a public nuisance because it affected a substantial number of people simultaneously.
69. Dr. Barkodar suffered harm that was different from the type of harm suffered by the general public because he was exposed to the contaminated water on a daily basis at his medical practice for more than 30 years, leading to his development of kidney cancer and his death.
70. As a direct and proximate result of the public nuisance created and/or maintained by Defendants, Dr. Barkodar developed kidney cancer, suffered pain and disability, and died, and Plaintiffs have suffered damages as previously alleged.

### FOURTH CAUSE OF ACTION
### PRIVATE NUISANCE
### (Against All Defendants)

71. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
72. Defendants created and/or assisted in the creation of a condition that was harmful to health, indecent and offensive to the senses, and an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of Dr. Barkodar's medical practice.
73. The contamination of the water supply serving Dr. Barkodar's medical offices constituted a private nuisance because it substantially interfered with Dr. Barkodar's use and enjoyment of his property.

74. As a direct and proximate result of the private nuisance created and/or maintained by Defendants, Dr. Barkodar developed kidney cancer, suffered pain and disability, and died, and Plaintiffs have suffered damages as previously alleged.

### FIFTH CAUSE OF ACTION
### FAILURE TO WARN
### (Against All Defendants)

75. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
76. Defendants knew or should have known that the water supply in South Gate was contaminated with dangerous chemicals that posed a risk to human health, including a risk of cancer.
77. 3M should have provided clear warnings about PFAS contamination risks to communities where its products were used, including South Gate.
78. 3M had decades of internal research showing potential health hazards but failed to adequately communicate these risks to the public.
79. 3M continued to market and sell PFAS-containing products without sufficient safety warnings.
80. Defendants had a duty to warn Dr. Barkodar and others about the contamination and the risks it posed.
81. Defendants breached this duty by failing to provide adequate warnings about the contamination and the risks it posed.
82. Had Dr. Barkodar been adequately warned about the contamination and the risks it posed, he would have taken steps to avoid or minimize his exposure to the contaminated water.
83. As a direct and proximate result of Defendants' failure to warn, Dr. Barkodar was exposed to toxic chemicals, developed kidney cancer, suffered pain and disability, and died, and Plaintiffs have suffered damages as previously alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:
1. For general damages in an amount according to proof;

**COMPLAINT FOR DAMAGES**

2. For special damages, including but not limited to medical expenses, funeral and burial expenses, and loss of financial support, in an amount according to proof;
3. For punitive damages against non-governmental Defendants in an amount according to proof;
4. For costs of suit incurred herein;
5. For prejudgment interest as provided by law, and
6. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: April 30, 2025

                                                      Jason Ingber
                                                     Jason M. Ingber, Esq.
                                                     **INGBER LAW GROUP**
                                                     Attorney for Plaintiff